1            **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF MICHIGAN**
2                  **SOUTHERN DIVISION**

3    **UNITED STATES OF AMERICA,**

4                    Plaintiff,          **Case No. 21-30392**
         **-v-**
5
     **GABRIEL ANTONE EBERHARDT,**
6
                     Defendant.
7    _____/

8            **DETENTION AND REMOVAL HEARING**
                  (Via Video Conference)
9         BEFORE THE HONORABLE **PATRICIA T. MORRIS**
               United States Magistrate Judge
10           United States Post Office Building
                 1000 Washington Avenue
11                 Bay City, Michigan
                  **August 18, 2021**
12

     **APPEARANCES:**
13
     FOR THE PLAINTIFF:    Sarah A. Youngblood
14                          DOJ-USAO
                            211 W. Fort Street
15                          Suite 2001
                            Detroit, MI 48226
16
     FOR THE DEFENDANT:    Mohammed A. Nasser
17                          Perkins Law Group PLLC
                            615 Griswold Street
18                          Suite 400
                            Detroit, MI 48226
19

20
     Transcribed by:
21   Christin E. Russell
     RDR, CRR, FCRR, CSR
22   (248) 420-2720
     Proceedings digitally recorded.
23

24

25

<u>TABLE OF CONTENTS</u>

| <u>Hearing</u> | <u>Page</u> |
|---|---|
| Detention Hearing | 3 |
|   Proffer and Argument by Ms. Youngblood | 4 |
|   Proffer and Argument by Mr. Nasser | 11 |
|   Rebuttal by Ms. Youngblood | 19 |
|   Ruling of the Court | 21 |
| Removal Hearing | 25 |

<u>Exhibits:</u>
(None Offered.)

| CERTIFICATE OF REPORTER | 26 |
|---|---|

1    Bay City, Michigan

2    August 18, 2021

3    2:53 p.m.

4                    *            *              *

5              THE CLERK:  Now calling case No. 21-30392, the United

6    States of America vs. Gabriel Eberhardt.

7              MS. YOUNGBLOOD:  Good afternoon, your Honor.  Sarah

8    Youngblood on behalf of the United States.

9              THE COURT:  Thank you, Ms. Youngblood.

10             MR. NASSER:  And good afternoon, your Honor.  Good

11   afternoon to your staff.  May it please this most Honorable

12   Court, Mohammed Nasser appearing on behalf of and with Mr.

13   Gabriel Eberhardt, who also appears via Zoom at the jail.

14             Mr. Eberhardt, please identify yourself for this

15   Court.

16             Can you unmute yourself, please, sir?

17             THE DEFENDANT:  Sorry about that.

18             Hi, your Honor.  I'm Gabriel Eberhardt.  Good

19   afternoon to your staff and yourself as well.

20             THE COURT:  Thank you, Mr. Eberhardt.  And thank you,

21   Mr. Nasser.

22             I should ask you, is it Eberhardt or Eberhardt?

23             THE DEFENDANT:  Eberhardt.

24             THE COURT:  Okay.  Great.  Thank you.

25             THE DEFENDANT:  Thank you.

```
 1              THE COURT:  And you do consent to us proceeding by
 2   Zoom, Mr. Eberhardt?
 3              THE DEFENDANT:  Yes, ma'am.  I mean, yes, your Honor.
 4              THE COURT:  Thanks very much.
 5              So I think today, our purpose is for a detention
 6   hearing, and the question is detention pending appearance in
 7   the charging district, which is the District of Hawaii, which I
 8   can say I think we would all like to go with you.  If that
 9   could be arranged, we would be all for it.
10              Is that correct, Ms. Youngblood?
11              MS. YOUNGBLOOD:  Yes.  The information, and my wish to
12   go to Hawaii, your Honor.  Yes.
13              THE COURT:  Yes, yes, and yes.
14              Well, then I think if everyone is ready, we can go
15   right ahead with that.  Go ahead, Ms. Youngblood.
16              MS. YOUNGBLOOD:  Thank you, your Honor.
17              Mr. Eberhardt has been charged in an indictment in the
18   District of Hawaii with two counts of distribution of 40 grams
19   or more of a fentanyl mixture in violation of 21 United States
20   Code, Section 841(a)(1), and Section 841(b)(1)(B)(vi).  He's
21   also been indicted on one count of distribution of 50 grams or
22   more of methamphetamine in violation of 21 United States Code,
23   Section 841(a)(1) and Section 841(b)(1)(A)(viii).
24              The Government is seeking detention on the basis of
25   dangerousness and risk of flight.  Given the nature of the
```

1  offenses and the probable cause established in the indictment,

2  there is a presumption in this case that no condition or

3  combination of conditions will reasonably assure the appearance

4  of Mr. Eberhardt as required in Hawaii, or the safety of the

5  community.

6      May I proceed by proffer?

7      THE COURT:  Yes.  And you can feel to combine proffer

8  with argument or however you want to do it is fine.  Thank you.

9      MS. YOUNGBLOOD:  Thank you, your Honor.

10      I'll begin by proffering the complaint, the

11  indictment, Pretrial Services' report, which does recommend

12  detention, the defendant's criminal history, and following

13  facts from the investigation:

14      This case begins with Mr. Eberhardt on bond for felony

15  firearms offenses out of Wayne County.  Law enforcement in

16  Hawaii has been investigating -- investigating a drug

17  trafficking organization.  Through the course of this

18  investigation, Mr. Eberhardt was identified as an operational

19  leader of this drug trafficking organization.  The indictment

20  is based on events in May and June of 2021 where undercover

21  employees called and texted Mr. Eberhardt to arrange purchases

22  of narcotics.

23      Mr. Eberhardt traveled to the place of purchase in

24  Hawaii, and while there, Mr. Eberhardt sent other people to

25  exchange the narcotics with these undercover employees.

1              On June 14th, 2021, following the incident on which

2    Count 3 is based, Mr. Eberhardt traveled to a storage unit in

3    Hawaii.  Mr. Eberhardt is not listed as the tenant of this

4    unit.  Video records from the storage facility show Mr.

5    Eberhardt removing what appears to be a duffle bag and a

6    backpack from the car he arrived in, and he walks to and enters

7    an elevator alone.  He rides that elevator to the floor where

8    the storage unit was located, walked towards the direction of

9    that unit, and then is off screen for approximately two

10   minutes.  The video footage then pick ups with Mr. Eberhardt

11   walking back towards the elevator.  He's empty-handed, and

12   again, alone.  He takes that elevator, exits the building, and

13   exits the storage facility.

14             The following information is simply meant to provide

15   context for the nature of the drug trafficking organization

16   overall.

17             Law enforcement searched that storage unit on June

18   30th, 2021 and recovered three assault rifles, two

19   semi-automatic pistols, extended magazines, ammunition, a

20   bulletproof vest and narcotics.

21             Through additional search warrants completed at other

22   locations utilized by the drug organization, officers recovered

23   multiple pounds of methamphetamine, fentanyl, and heroin, as

24   well as more than $250,000 in cash.

25             Mr. Eberhardt has a violent criminal history,

1    including assault with intent to murder, for which he served

2    approximately 15 years in prison.  Following his release, the

3    defendant began a two-year parole term in February of 2017.

4    Less than a year into this parole term, he violated by engaging

5    in additional criminal activity involving narcotics

6    distribution.  Officers stopped a car that the defendant was

7    driving.  Two passengers inside the car told officers that the

8    defendant had given them narcotics, and they noted that they

9    purchased narcotics from the defendant before on multiple

10   occasions.

11        Less than a year after that incident, the defendant's

12   parole was violated again.  He was arrested by Dearborn Police

13   for domestic violence.  He bit and hit a woman as part of that

14   incident.  The parole officer writing this violation report

15   indicated that the defendant had adjusted poorly to parole and

16   remarked that his temper was a particular weakness.

17        Most recently, in July of 2020, the defendant was

18   arrested by Detroit Police for a felony firearm offense.  As

19   officers approached Mr. Eberhardt and another individual in

20   Detroit, the defendant fled on foot.  Officers saw the

21   defendant pull a gun from his waistband and hold it in his hand

22   as he fled.  Officers eventually detained Mr. Eberhardt and

23   located a loaded gun in his path of flight.  That case is

24   currently pending in Wayne County Circuit Court, and the

25   defendant was on bond for that case at the time of the event,

1    excuse me, at the time of the events alleged in this

2    indictment.

3            Your Honor, that's the extent of the Government's

4    proffer.  Based on these reasons, the Government seeks

5    detention.

6            May I please proceed to argument?

7            THE COURT:  Yes.  Thank you.

8            MS. YOUNGBLOOD:  Thank you.

9            The Government believes the following factors justify

10   detention on the basis of danger to the community, as well as

11   risk of flight.

12           First, regarding the nature and circumstance of this

13   federal offense, this offense is very serious and it shows a

14   disregard for the law.  These are three controlled substance

15   offenses with mandatory minimums of five years and ten years

16   because Congress has recognized these are deadly and dangerous

17   drugs.  It's also notable that the conduct on which this case

18   is based occurred while the defendant was on bond for a felony

19   firearms case in Wayne County.  This indicates that court --

20   court supervision is not a deterrent for him.

21           Turning, second, to the weight of the evidence, there

22   is significant evidence here that the defendant is both a

23   danger to the community and the risk of flight.

24           There are two reasons that no conditions can assure

25   the safety of the community here.  First, there is probable

1   cause to believe the defendant distributed multiple types of

2   dangerous drugs in Hawaii while under court supervision.

3           This is also not the first time that the defendant has

4   faced narcotics allegations while under supervision.  He

5   violated his parole following an arrest where witnesses told

6   police defendant gave them drugs to hold that day so the

7   defendant -- so that the drugs would not be found on the

8   defendant.  And those same witnesses told officers that they

9   had bought drugs from the defendant on multiple prior

10  occasions.

11          Second, the defendant has a history of physical

12  violence, including a history of using guns.  He was convicted

13  with assault -- convicted of assault with intent to murder and

14  sentenced to 15 to 25 years in Wayne County Circuit Court.

15  Based on my experience, this is a considerably significant

16  sentence from Wayne County, especially for a case that did not

17  result in death.  Finally, the defendant also has a history of

18  violence at home.  His parole was violated for biting and

19  hitting a woman.

20          Turning to flight, the defendant has consistently

21  shown that he will not comply with court supervision, which

22  indicates a risk of non-compliance with this Court's orders,

23  and non-appearance in this case in Hawaii, and this risk cannot

24  be mitigated by conditions here.

25          His parole officer has noted that Mr. Eberhardt

1   adjusted poorly to parole.  The defendant has a history of

2   criminal activity while under supervision, and he fled from

3   police during the incident that led to his arrest for his

4   pending state firearms case.  He also does not appear to have

5   any ties to Hawaii, the charging district, other than the

6   criminal conduct alleged in the indictment.  Moreover, this

7   charging district is far away and difficult to travel to.

8          Moving to the history and characteristics of the

9   defendant, he is unemployed with no stable income.  This

10  indicates that he does not have the means to get to Hawaii.

11         His history also includes significant criminal

12  history.  Again, a violent assault with intent to murder, as

13  well as poor adjustment to parole when he was released from his

14  prison term for that assault with intent to murder conviction,

15  and then criminal activity while under supervision.

16         Finally, the nature and seriousness of danger to the

17  community.  The defendant's violence, criminal activity under

18  supervision, and difficulty traveling to a faraway charging

19  district where he has no other ties present a serious risk of

20  danger to the community and risk of flight.

21         The Government is, therefore, seeking detention

22  because no condition or combination of conditions will

23  reasonably assure the safety of the community and the

24  appearance of the defendant as required.  Detention is

25  consistent with Pretrial Services's recommendation.

1          Thank you.

2          THE COURT:  Thank you, Ms. Youngblood.

3          Go ahead, Mr. Nasser.

4          MR. NASSER:  Thank you.

5          Your Honor, if it may please this Honorable Court,

6    first and foremost, the U.S. Attorney here has allocuted very,

7    very well on behalf of the Government; however, Judge, there

8    are some factors that this Court should be aware of.

9          I'm going to start with, first and foremost, it's

10   uncontested that this is a presumption case.  Pursuant to the

11   Bail Reform Act 18 USC 3142, a defendant may be only detained

12   pending trial if there is no condition or combination of

13   conditions which will reasonably assure his appearance at trial

14   and the safety to the community.  Once the Government has met

15   their preliminary burden, the defendant may rebut this

16   presumption proffered by producing some credible evidence that

17   he will appear and will not pose a threat to the community.

18   This is *United States v. Carbone*, 793 F.2d 559.

19          Now, undeniably, the U.S. Attorney has focused a lot

20   on this young man's previous history.  He's 39 years of age.

21   He has a minor child.  He's a lifelong resident of the city of

22   Detroit.  And while sister counsel has indicated that perhaps

23   flight risk is a problem based upon the fact that he's not

24   situated in Hawaii or Hawaii is a significant distance away,

25   this Court is fully aware of the fact that pursuant to

 1     *Townsend*, which is *United States v. Townsend*, 897 F.2d 989,

 2     which is a 1990 case, that community is not limited to the

 3     charging district but extends to any community within the

 4     United States, and that would include Detroit where he's a

 5     lifelong resident.  So I don't think the fact that Hawaii is a

 6     distance away and he doesn't reside in Hawaii, that has zero

 7     basis on this Court's determination because pursuant to

 8     *Townsend*, it's the United States, and any district within the

 9     United States is a valid district to reside in.

10            But, Judge, let's focus on the actual criminal

11     history, which is what sister counsel brought up.  Let's talk

12     about this.  He was charged with assault with intent to murder,

13     which is attempted murder, AWIM, in the Third Circuit Court,

14     this was back in 2000.  So he was only 17 years of age at the

15     time.  He went to bench trial and he was sentenced to 15 to 25

16     years.

17            Now, sister counsel indicated that when he got

18     released, this Court should be apprised of the fact that he

19     successfully completed parole.  This was closed out.  This is a

20     life offense.  His parole could have been extended.  It was

21     not.

22            Now, sister counsel points to an incident where he

23     violated, and there was a case out of Westland.  Yes, that

24     happened in 2017 when he was 35 years of age.  The original

25     charge was a felony dangerous drugs.  Bear in mind, the two

1   co-defendants, the two alleged women that were in this matter

2   were also charged.  I was his attorney on that matter, and

3   ultimately, the drug offense was dismissed and he pled to a

4   disorderly conduct.  Disorderly conduct is an individual that

5   is loud and boisterous.  Disorderly conduct is a 90-day

6   misdemeanor, which is not even abstractable in a CCH in a state

7   court.  He was given fines and costs.  That's what was given,

8   Judge.  So sister counsel is pointing to a drug offense.  He

9   has zero -- he has zero drug offenses in his history.  None.

10          Let's talk about the next offense.  The next offense

11  was an alleged domestic violence while again on parole.  The

12  Court is fully apprised and as outlined within the Pretrial

13  Services' report -- again, I was his attorney on that case as

14  well.  That case was dismissed.  So any allegations or

15  suggestions that were brought up pursuant to an alleged

16  domestic violence, the Court deemed it to be inappropriate and

17  found it dismissed.  So there is absolutely no veracity to that

18  statement.  None.  He doesn't have a drug history.  He does not

19  have -- he does not certainly have a domestic situation

20  history, which is predicated upon the 2018 dismissal.  We're

21  looking at cases that stretch back to 2000, Judge.  We're

22  talking 21 years ago.

23          But let's, let's stick to the perimeters of the

24  allegations that are listed within the actual indictment.

25  First and foremost, Mr. Gabriel Eberhardt has retained counsel,

1   myself and my office, the Office of Todd Russell Perkins, so

2   issues of finance are not there, Judge.  I am not an appointed

3   attorney.  He's already retained my services.  While he is not

4   gainfully employed at this point, he was formerly gainfully

5   employed.  But more importantly, he has a supportive family who

6   has retained our services.

7           Secondly, this matter, Judge, was sealed.  We were

8   looking into this matter.  It was sealed.  Not even the U.S.

9   Attorney that stands before this Court or the Court had any

10  information about this indictment until it was unsealed by

11  Hawaii some six hours away.  So we are prepared to proceed.

12  And if given bond, or once, God willing, given bond, we will

13  assure this Honorable Court that we will be in Hawaii within

14  seven days.  We had already booked our flights but we are

15  waiting upon the verification of whether or not he gets bond in

16  order to travel our way to Hawaii.

17          As it relates to the allegations that are listed here,

18  Judge, we're talking about three specific dates.  You're

19  talking about May 20th, 2021, you're talking about June 1st,

20  2021, and you're talking about June 14th, 2021.  Those are the

21  dates that are listed within the indictment.  There is

22  absolutely not a single count that involves any guns at all.

23          The position of the U.S. Attorney that this individual

24  is some type of mastermind is not, is not certainly buttressed

25  by the complaint or the sealed indictment that's been offered

1    here today.

2         But, Judge, the question that confronts this Honorable

3    Court is, one, is this a presumption case.  The answer is yes.

4         Two, is this a rebuttable presumption, and is some

5    credible evidence being offered that can assure this Honorable

6    Court that there are conditions or a set of conditions that can

7    be set by this Court to ensure that, one, danger to the

8    community, and two, flight risk.

9         Two, as it relates to the flight risk, I believe that

10   the argument about Hawaii is invalid, and certainly, he is a

11   lifelong resident of Detroit.  All of the information in the

12   Pretrial Services' report was verified by his mother.  He has

13   provided information as to where he's lived.  Where he was

14   picked up, Judge, was his home.  He wasn't hiding.  He wasn't

15   running.  He was at home.  The Marshals Services went and

16   collected him at the address that has been known, that is

17   listed on his ID, and he's been there for more than three

18   years.  And again, he had already retained counsel.  We were

19   already there and we were looking into any allegations out of

20   Hawaii; however, it was sealed, and were unable to get any

21   information about that.

22        Dangerousness.  Now, dangerousness of course, as this

23   Court is aware, does not relate to the dangerousness in terms

24   of the weight of evidence and in terms of guilt, but it relates

25   to dangerousness as it relates to the bond components, and are

1   there conditions that can be set.

2           Judge, I, I submit to this Honorable Court, that, one,

3   this Court can set a GPS tether.

4           Two, this Court can set house arrest, other than his

5   ability to fly to Hawaii.

6           And three, this Court can set a very short leash.

7   Seven days is all we ask.  We will be in Hawaii, and we will

8   get arraigned on this matter once again, and begin the clock on

9   this matter.  We are confident that there are defenses in this

10  matter, Judge.  And moreover, Mr. Eberhardt as the ability to

11  defend these allegations.

12          Now, sister counsel did mention an interesting thing

13  that must be brought to this Court's attention, that while on

14  bond for a CCW, felon in possession, felony firearm out of the

15  Third Circuit, well, actually out of the 36th District Court is

16  when these allegations took place.  I am the attorney on that

17  case, Judge.  There was a preliminary exam on this case.

18          There is a clear issue as it relates to the

19  identification of my client, and more aptly, any possession of

20  any firearm.  This alleged firearm was found some distance

21  away; that this individual was walking away from the officers.

22  Officers gave chase.  The officer admitted on the stand that

23  this was not -- that he didn't identify himself as an officer,

24  and there is nothing illegal about this person walking away.

25  Ultimately, there was a firearm found within some distance of

1  my client.  No forensics, no DNA, and as it turned out the

2  firearm was legally owned by somebody else.  So there is

3  ostensible defenses, Judge, ostensible.  And I'm confident that

4  motionable issues -- there will be motionable issues, motions

5  to quash, motions to suppress, that will be filed at the

6  Circuit Court level.

7          So certainly while I appreciate the sentiments of the

8  U.S. Attorney as it relates to this alleged conduct on bond,

9  this alleged conduct is being contested vehemently by counsel

10 that is present here today.

11         I've addressed all of this young man's matters since

12 his release.  So he has substantial ties to the community, and

13 he has substantial ties to this firm.  And we are confident

14 that we -- and I have addressed all of his matters.  And I'm

15 confident that I'm going to be able to address the Detroit

16 matter.  And I'm asking this Honorable Court that there are a

17 set of conditions, while the sentiments of Pretrial Services'

18 report do not reflect that, I believe that that is largely

19 predicated and, and, and suggested, and not suggested, stated

20 within the writing.

21         One of the issues was his lack of employment.  And

22 that is something that this Court should bestow as this

23 individual should not be out.  That is the furthest from the

24 truth, Judge.  Now, this individual has the opportunity to have

25 gainful employment.  He did have gainful employment.

1        In speaking to his mother, there is opportunity for
2   gainful employment again.  And although, this has been
3   suppressed by this allegation that is present, he can get back
4   to work and proof of employment can be offered within 14 days
5   of him being on bond.  Of course, we're going to be going to
6   Hawaii, so, you know, he can't be working once we're flying,
7   but there can be proof offered as it relates to that, Judge.

8        Again, the position of the defense, Judge, is that
9   this Court does have the ability to discern -- the safety of
10  the community, I believe, is the major crux here.  Any time
11  there is an allegation of narcotics, there is a clear safety to
12  the community issue that is presented to any court, even one as
13  reasonable as this Court, undeniably, that goes without saying.
14  However, these allegations allegedly took place months ago.
15  They took place in May and in June.  This indictment came out.
16  There has been no alleged conduct or contact with the criminal
17  justice system since that alleged time.

18       More importantly, the officers, or the U.S. Marshals
19  burst into his home, they didn't find any firearms.  They
20  didn't find any guns.  They didn't find any drugs.  They didn't
21  find any packaging.  They didn't find any money.  They didn't
22  find anything that is reflective of an individual who is an
23  alleged chapo mastermind of some type of drug cartel.  They
24  didn't find anything even remotely close to that.  If that was
25  found in his home, certainly that would have been something

1    that was brought to the attention of this Court, and listed

2    within the documents here.

3            So, Judge, I am asking this Honorable Court to allow

4    us the opportunity within seven days to present, again, GPS

5    tether will be effects, house arrest at his home, until that is

6    done.  There are two homes that are present, the home that he's

7    been staying at for the last three years, and the home of his

8    mother, who is a lifelong Detroit resident with absolutely no

9    prior record whatsoever.  So that is the position of defense.

10           And I believe, Judge, we've presented conditions or a

11   set of conditions that have rebutted the presumption and, and

12   as listed.  The presumption is rebuttable, and it is viewed in

13   the auspice of some credible evidence.  The fact that he has

14   retained counsel, the fact that these matters have been

15   addressed, the fact that he has ostensible defenses in the

16   state matters, and more importantly that these matters have

17   taken place some months ago with the ability to defend, I

18   believe is some credible evidence and I'm asking this Court to

19   afford bond with set conditions.

20           THE COURT:  Thank you, Mr. Nasser.

21           Ms. Youngblood, do you have any brief rebuttal?

22           MS. YOUNGBLOOD:  Yes, your Honor.  Thank you.

23           Even if the defendant is willing to take himself to

24   Hawaii, conditions cannot mitigate the danger to the community

25   here.  His criminal history is significant because it shows

1    that court supervision is not appropriate in this case.

2           Within just the last five years, the defendant was in

3    prison for assault with intent to murder.  He was released on

4    parole, and he violated it twice.  Now, the conduct for the

5    basis of those violations, the Government believes also

6    indicates a danger.

7           But even just focused on the significance here of the

8    violations, it's showing that the Court should not trust him to

9    be out on bond because he will not comply with court's orders

10   and the court's supervision.

11          Finally, home confinement or a tether is inappropriate

12   here because the defendant will remain a danger even if he's in

13   his home.  He would be able to engage in the sale of narcotics

14   through remote means.  As laid out more completely in the

15   complaint, the sales forming the basis of this indictment

16   involved purchasers contacting the defendant on the defendant's

17   cell phone.  And the defendant used other people to handle the

18   actual drop off and collection of narcotics and money.

19          Also, the history of parole violations regarding

20   domestic violence indicates that home confinement can pose

21   other dangers for this defendant and those around him.

22          The Government believes that the defendant has not

23   rebutted his presumption in this case, although, even if he

24   had, the fact that this is a presumption case is just another

25   factor for the Court to consider here as to the danger to the

DETENTION HEARING - 8/18/2021

21

```
 1    community, and no combination of conditions can reasonably

 2    assure the safety of the community here.  And that's why the

 3    Government asked for detention, and Pretrial Services also has

 4    recommended the same.

 5              Thank you, your Honor.

 6              THE COURT:  Thank you, Ms. Youngblood.

 7              And thank you, Mr. Nasser.

 8              In looking under the factors under Section 3142(g),

 9    the first is the nature and circumstances of the offense

10    charged.  And I think we all agree here that the charges carry

11    with them a presumption in favor of detention.  As noted by the

12    defense correctly, that presumption can be rebutted with some

13    credible evidence to, to make that rebuttal.

14              The next factor is the weight or the evidence

15    against -- the weight of the evidence, excuse me, of the

16    evidence against a person.  And I think both counsel properly

17    noted that the weight of the evidence is, in this circuit

18    anyway, is the weight of the evidence of dangerousness, and not

19    the weight of the evidence of guilt.

20              As to history and characteristics of a person,

21    certainly, Mr. Eberhardt has good ties to the Eastern District

22    of Michigan.  He's been a lifelong resident here.  He has

23    family here that he's close to.  Also, in looking at his

24    health, he has some issues, but is in generally pretty good

25    health, and no evidence of any current or past mental health
```

1   conditions that would pose any problems.  So I think all of

2   those factors go in favor of Mr. Eberhardt.

3          The next factor is at the criminal history, and

4   that's, that's where things get more difficult for Mr.

5   Eberhardt.  I do think his criminal history is pretty intense.

6   There is a couple probation and parole violations, one felony

7   firearm, and one of pending charges from 2020 in the Third

8   Circuit in Detroit.  Those are just pending, I realize, but

9   probably we can assume probable cause supports them or they

10  wouldn't have stood.

11         But of course, the most damning one is I suppose the

12  conviction of assault with intent to murder.  These violent

13  convictions, or the violent conviction, plus use of weapons all

14  the more exacerbates I think Congress's decision that

15  distribution of controlled substances is a per se danger to the

16  community, which is why there is the presumption in favor of

17  detention.  And when you mix firearms and weapons used with

18  controlled substance delivery, of course, the danger does

19  nothing but increase.

20         I have not really focused on the financial issues.  I

21  don't think that's important.  I assume that the defendant

22  could get to Hawaii if he wanted to.  And although, the defense

23  indicates, and argues very strenuously and very well that there

24  has been a rebuttal done here because they have presented

25  credible evidence to support the fact that they have rebutted

DETENTION HEARING - 8/18/2021

23

```
1   the presumption in favor of detention, and they focus on, you
2   know, taking these cases on, an affirmation from defense
3   counsel that he would go with and get Mr. Eberhardt to Hawaii.
4   I have no reason disbelieve that.  I believe that Mr. Nasser
5   would do all he could to help, to help his client, and, and get
6   to Hawaii, and he indicates that he has some ostensible
7   defenses and motions that he would be bringing.  But I don't
8   feel that that's the kind of evidence that we're looking for in
9   trying to rebut the presumption.  Really, the evidence should
10  be focused on, in this case, you have to focus on both danger
11  and risk of non-appearance.
12          And I think the evidence offered by defense counsel
13  goes toward risk of non-appearance, and I understand that.  But
14  I feel the stronger evidence, the bigger problem presented to
15  the Court as far as considering, you know, the idea that you
16  would fashion bond conditions is, is the danger, more than it
17  is the risk of non-appearance, and I don't feel that
18  presumption has been, has been rebutted.
19          I would tend to agree with, with the Government that,
20  you know, having found weapons together with pounds of
21  controlled substances, and the recent search warrants that led
22  to the charges in Hawaii indicate that I think there is a
23  danger here, even if the defendant were on a GPS tether, the
24  strongest thing that we could do.  That can tell us where he
25  is, but it can't tell us what he's doing of course.  And even
```

1   if he were in the home and stay there, he could still conduct

2   narcotics and controlled substance transactions whether he used

3   others, others as his runners, as he has in the past, or by

4   whatever means.

5         But I do find, unfortunately, in this case, that the

6   presumption in favor of detention here has not been rebutted,

7   especially as to dangerousness.  And even if I could find it

8   rebutted as to risk of non-appearance, I just cannot on this

9   record find that the presumption has been rebutted as far as

10  dangerousness is concerned.

11        And so I do find that there are no condition or

12  combination of conditions that the Court can fashion to allay

13  the danger that this defendant poses to a reasonable level that

14  comfortable with.  And for these reasons then, the defendant

15  will be detained pending his appearance in the District of

16  Hawaii.

17        I thank you both for your excellent arguments.  You

18  made it a much closer call than it looked like in the

19  beginning.  And I wish you all good luck with everything from

20  here.

21        MR. NASSER:  Thank you, Judge.

22        MS. YOUNGBLOOD:  Thank you, your Honor.

23        THE CLERK:  Judge, I do not believe that the rule 5

24  waiver was addressed.

25        THE COURT:  Oh, okay.  Was that not done with Judge

1   Stafford?

2          THE CLERK:  Correct.  It was -- the signed waiver was

3   submitted today by Mr. Nasser.

4          THE COURT:  Oh, okay.  We do have now a signed waiver,

5   but I should ask Mr. Joplin, [sic] I guess do you agree that

6   you have given up your rights to an identity hearing, and that

7   you are the Jamar Joplin that is named in the indictment

8   stemming from the District of Hawaii?

9          MR. NASSER:  Sorry, Judge.  It's Gabriel Eberhardt.

10          THE COURT:  I'm sorry, Eberhardt.  Sorry that was the

11   last guy.  I threw my stuff aside so I was on the wrong one.

12          Mr. Eberhardt, do you agree that you are the Mr.

13   Eberhardt that is named in the indictment stemming from the

14   District of Hawaii?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And you do give up your right to an

17   identity hearing to prove that; is that correct?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  Thank you very much, Mr.

20   Eberhardt.

21          MR. NASSER:  Thank you, Judge.

22          THE CLERK:  We are off the record for Gabriel

23   Eberhardt.

24      (Proceeding concluded, 3:25 p.m.)

25

REMOVAL HEARING - 8/18/2021

26

1

2

3                           *                  *                  *

4

5

6                          **CERTIFICATE OF REPORTER**

7

8          I certify that the foregoing is a correct transcript

9    from audio recorded proceedings in the above-entitled cause on

10   the date hereinbefore set forth.

11

12

13                    ___s/ Christin E. Russell___

14           CHRISTIN E. RUSSELL, FCRR, RDR, CRR, CSR-5607

15                   Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25